UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUSSELL D. GARRETT, Chapter 7
Trustee for the bankruptcy estate of
Robert and Stephanie Taylor,

                    Plaintiff,

        v.

MORGAN ROTHSCHILD f/k/a
MORGAN HENNING, HALEY
HENNING, and JOHN DOES 1-10,

                    Defendants.

CASE NO. C18-5863 BHS

ORDER DENYING DEFENDANT
MORGAN ROTHSCHILD'S
MOTION TO DISMISS OR TO
COMPEL ARBITRATION

This matter comes before the Court on Defendant Morgan Rothschild f/k/a Morgan Henning's ("Rothschild") motion to dismiss or in the alternative to compel arbitration. Dkt. 7. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion to dismiss or compel arbitration for the reasons stated herein.

## I.   PROCEDURAL HISTORY

On September 17, 2018, Robert Sean Taylor ("Sean Taylor") and Stephanie Taylor ("the Taylors") filed suit against Rothschild, his ex-spouse Haley Henning ("Henning"), and John Does 1-10 in the Washington Superior Court for Clark County.

Dkt. 1-1. On October 25, 2018, Rothschild removed the case to this Court. Dkt. 1.[1] On November 16, 2018, Rothschild moved to dismiss or in the alternative to compel arbitration and stay the case. Dkt. 7. On December 11, 2018, the Court entered a stay pursuant to the parties' stipulation for the parties to pursue settlement discussions and for the Taylors' counsel to seek litigation approval from the Bankruptcy Court. Dkts. 9, 10. On January 7, 2019, the parties stipulated to lift the stay and renote the motion. On January 14, 2019, the Taylors responded. Dkt. 12. On January 25, 2019, Rothschild replied. Dkt. 16. On February 24, 2019, the Court granted a motion to substitute Chapter 7 Trustee Russell Garret into the action as Plaintiff in place of the Taylors. Dkt. 19.

## II.   FACTUAL BACKGROUND

This case involves a dispute between a franchisor and disenchanted franchisees. Rothschild runs Party Princess International ("Party Princess"). Dkt. 1-1, ⁋ 2. Henning, his former spouse, worked with Rothschild on the business and advised on franchises. *Id.* In October 2015, Party Princess filed paperwork to register in Washington as a franchisor, but the filing was unsuccessful. *See* Dkt. 8, Declaration of Morgan Rothschild ("Rothschild Decl."), ⁋ 8.

At some point in 2015, Sean Taylor consulted a franchise broker about investment opportunities who referred him to Rothschild. Dkt. 1-1, ⁋ 15. At this time, all parties

---

[1] Rothschild informs the Court, and the Taylors do not contradict, that Henning and the Does have not been served and therefore may remove pursuant to 28 U.S.C. § 1446(b) if they choose once service has occurred. Dkt. 1 at 4. The Court notes that Rothschild appears to provide arguments in favor of dismissal on both his own behalf and on Henning's. However, Rothschild's attorneys appear only on his behalf, so the Court limits its analysis to his presence in the suit.

resided in California. *See* Dkt. 12 at 2, 3; Dkt. 16 at 6. Taylor and Rothschild spoke by phone, and Rothschild "informed Taylor that a Google advertising campaign alone in Taylor's prospective territory would generate at least $100,000 per year for Taylor," but Rothschild "could not put the projections in writing due to regulatory prohibitions." *Id.* ¶ 17. Rothschild also told Sean Taylor that meeting Party Princess's requirement that each franchise host 40 parties per month would be "easily achievable." *Id.* ¶ 18. Henning and Stephanie Taylor met during the initial disclosure process and communicated by phone, text, and in-person meetings. *Id.* ¶ 20. Rothschild and Henning "portrayed themselves as a team to the Taylors." *Id.*

In December 2015, Sean Taylor purchased a Party Princess Franchise "for the Washington territory," and "[Rothschild] caused Party Princess to send written documents to Taylor stating that the worst-case-scenario revenue data for Taylor would be $90,000 in gross revenues based solely on spending $2,190 per month on the Google advertising campaign." *Id.* ¶ 21.[2] In January 2016, according to Rothschild, Party Princess provided supplemental or amended information to the Washington Department of Financial Institutions ("DFI") and successfully registered as a franchisor. Rothschild Decl. ¶ 8. In February 2016, Rothschild "notified Mr. Taylor that Party Princess's franchisor registration had not been effective in Washington at the time the Taylors originally signed the Franchise Agreement." *Id.* On February 27, 2016, Rothschild sent

---

[2] Rothschild argues that "[a]pproximately two-thirds of the Taylors' franchise territory was located in Portland, Oregon; the remaining third was located in Vancouver, Washington." Dkt. 7 at 3 (citing Rothschild Decl. ¶ 2).

Taylor a new franchise agreement by email to sign. *Id.* Rothschild declares that the Taylors moved to the Pacific Northwest "sometime during 2016." *Id.* ℙ 2. Taylor alleges that despite his continued efforts to operate the franchise, "including fully funding the marketing campaign, [he] never achieved the results promised by [Rothschild]." Dkt. 1-1, ℙ 24.

In October 2017, Taylor filed a complaint about Party Princess with the DFI's Securities Division. *Id.* ℙ 25. Party Princess then filed an arbitration claim "seeking to terminate Taylor's franchise," and the parties began arbitration in Colorado. *Id.*[3] As noted, the Taylors filed this lawsuit on September 17, 2018. Dkt. 1-1. The Taylors claim that they have lost "well over $200,000" in investments in the franchise. *Id.* ℙ 28.

The Taylors assert four causes of action. *Id.* ℙℙ 29–50. The first cause, for intentional misrepresentation, alleges that Rothschild made knowing false representations about likely revenue from the franchise and the amount of effort needed to earn profits and that Taylor relied on these statements in purchasing the franchise and were damaged when their franchise failed to return the expected profit. *Id.* ℙℙ 29–33. The second cause, for negligent misrepresentation, makes the same allegations, except that it alleges that Rothschild should have known his representations were false. *Id.* ℙℙ 34–38. The third cause, for violation of the FIPA constituting violation of Washington's Consumer Protection Act, alleges Rothschild and Party Princess either failed to provide a franchise disclosure document or provided one that did not comply with Washington law because

---

[3] Additional factual background on the arbitration proceedings is provided in this Order's discussion of res judicata and claim preclusion.

Party Princess was not properly registered as Washington franchisor, made false statements and omitted material facts in connection with the sale, and sold the franchise without being registered to do so in Washington. *Id.* ¶¶ 39–43. The third cause also alleges that "Defendants' wrongful conduct involves a matter of substantial public interest as other Washington citizens have been harmed in a similar manner." *Id.* ¶ 44. The fourth cause of action, for unjust enrichment, alleges that "[d]uring the process of selling a franchise to Taylor" Rothschild made false representations about the franchise's earning potential, that the Taylors paid Rothschild for a franchise in reliance on these statements, that despite Taylor's significant additional investments, he never achieved the promised results, and that Rothschild unjustly retained the benefits conferred on him. *Id.* ¶¶ 46–50.

## III. DISCUSSION

Rothschild puts forward six reasons why the Court should dismiss this case: (1) the Court lacks personal jurisdiction over the defendants, (2) all claims are compulsory counterclaims to an ongoing arbitration, (3) all claims were the subject of a final dismissal in the ongoing arbitration and are barred by res judicata, (4) all claims are barred by collateral estoppel, (5) all claims are barred by the parties' contracted statute of limitations, and (6) all claims are barred by warrants and representations in the underlying contract. Dkt. 7 at 1–2.

In the alternative, Rothschild asks the Court to stay the case and compel the Taylors' claims to arbitration. *Id.* at 2. Finally, Rothschild claims that whether the Court dismisses the case or compels arbitration, he is entitled to attorneys' fees. *Id.*

**A.      Personal Jurisdiction**

Claims against a defendant may be dismissed when a court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2). When a defendant seeks dismissal on these grounds, the plaintiff must prove jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits, if that law is consistent with federal due process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Washington grants courts the maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Thus, the only question remaining the Court whether its exercise of jurisdiction comports with the limitations imposed by due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984). A court may not exercise jurisdiction over a defendant if that exercise of jurisdiction "offend[s] traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Fair play and substantial justice mandate that a defendant has minimum contacts with the forum state before it may be hailed into a court in that forum. *Id*. The extent of those contacts can result in either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If the requirements for either are met, a court has jurisdiction over the parties. *Helicopteros*, 466 U.S. at 413–14.

**1.      General Jurisdiction**

General jurisdiction permits a court to consider claims against a person or a corporation for any conduct, even that which occurred outside the forum state. *Goodyear*,

564 U.S. at 924; *Daimler*, 571 U.S. at 126–27. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 919. The Taylors do not specify whether they believe the Court has general or specific personal jurisdiction over Rothschild. *See* Dkt. 12 at 8–10. However, they do not provide evidence contradicting Rothschild's statements in his declaration that he has never had business offices in Washington, owned property in Washington, or been a Washington resident. *Compare* Dkt. 12 *with* Rothschild Decl. ¶¶ 1–2. Therefore, the Court concludes it does not have general jurisdiction over Rothschild.

## 2.    Specific Jurisdiction

Specific jurisdiction permits a district court to exercise jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). To prove that specific jurisdiction exists in a tort-based action, a plaintiff must demonstrate that: (1) a defendant purposefully directed its activities at the forum state, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Picot*, 780 F.3d at 1211. A defendant purposefully directs its conduct toward a forum state when its actions are intended to have an effect within the state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2003). This occurs if the defendant: "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Financial Co.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Relatedly, specific jurisdiction exists in a contract-based action when a defendant purposefully avails himself of the privilege of conducting activities in the forum state. *Schwarzenegger*, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* In return for the benefits and protections of the forum's laws, the defendant must "'submit to the burdens of litigation in that forum.'" *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Washington's FIPA prohibits the sale of unregistered franchises in Washington and provides for jurisdiction in Washington courts over cases arising out of such sales. RCW 19.100.020(1) provides that it is unlawful "for any franchisor or subfranchisor to sell or offer to sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted." RCW 19.100.160 provides:

> Any person who is engaged or hereafter engaged directly or indirectly in the sale or offer to sell a franchise or in business dealings concerning a franchise, either in person or in any other form of communication, shall be subject to the provisions of this chapter, shall be amenable to the jurisdiction of the courts of this state, and shall be amenable to the service of process under RCW 4.28.180, 4.28.185 and 19.86.160 . . . .

The Court agrees with the Taylors that Rothschild falls within the jurisdictional parameters of the FIPA. Therefore, the Court must determine whether its exercise of personal jurisdiction over Rothschild is consistent with due process. *Int'l Shoe*, 326 U.S. at 316.

When a court rules on a motion to dismiss for lack of personal jurisdiction based on affidavits and discovery materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted). "Additionally, any evidentiary materials submitted on the motion are construed in the light most favorable to the plaintiffs and all doubts are resolved in their favor." *Ochoa*, 287 F.3d at 1187 (internal quotation marks omitted).

Party Princess attempted to register as a Washington franchisor in October 2015. Rothschild Decl., ¶ 8. Rothschild is the principal of Party Princess and does not allege it has any other employees. *See* Rothschild Decl., ¶¶ 1, 8. The Taylors describe Rothschild as the "sole member and manager" of Party Princess. Dkt. 1-1 ¶ 2. These facts support an inference that Rothschild conducted or directed the registration himself, which Rothschild does not contradict.

Rothschild then sold a franchise to the Taylors, following negotiations. Dkt. 1-1, ¶¶ 16–21. He personally discussed the purchase with Taylor and caused Party Princess to convey revenue estimates to Taylor after he made the purchase. *Id.* ¶¶ 16–18, 21. This franchise had one-third of its territory in Washington and two-thirds of its territory in Oregon. Rothschild Decl., ¶ 2. Though Rothschild argues, and the Taylors do not dispute, that the sale took place in December 2015 in California, at a time when all parties lived in California, Dkt. 7 at 3–4 (citing Rothschild Decl. ¶ 2), and Rothschild did not appear to

have advertised franchise opportunities directly to Washington residents, the intent of the negotiations and sale was that Rothschild would establish an ongoing business relationship with a franchisee who would operate one-third of his business in Washington. The Taylors emphasize that they planned to and later became residents of Washington and that Rothschild knew of their plans. Dkt. 12 at 2–3. Rothschild declares that the Taylors told him they were moving to "the greater Portland metropolitan area." Rothschild Decl. ¶ 2.

The facts here are substantially similar to *Hueber v. Sales Promotion*, 38 Wn. App. 66, 71–72 (1984), where the court exercised specific jurisdiction over franchisors in Texas who negotiated and sold a franchise to Washington residents, the "focal point and end product of [the] activity" was an agreement for a franchise with Washington territory. Rothschild cites *McGowan v. Pillsbury Co.*, 723 F. Supp. 530, 534–35 (W.D. Wash. 1989) for the proposition that the franchisor-franchisee relationship alone is not sufficient for specific jurisdiction. Dkt. 7 at 9. However, in *McGowan*, like *Hueber*, the court found that defendants who were directly involved with the sale of the franchise, participating in the dialogue culminating in the sale, *were* subject to specific jurisdiction. *McGowan*, 723 F. Supp. at 534–35.

Rothschild also cites *Mika v. Stevens*, 178 Wn. App. 1030, 2013 WL 6835297, at *5 (Dec. 23, 2013), for the proposition that selling a Washington business does not create an expectation that the negotiator will being haled into Washington courts, and *Anglin v. 21st Century Ins. Co.*, 116 Wn. App. 1010, 2013 WL 1076538, at *2 n.4 (Mar. 10, 2003), for the proposition that a contract negotiated and signed in California does not confer

jurisdiction in Washington. Dkt. 16 at 4. The Court finds the facts of this case are closer to *Huber* than *Mika* or *Anglin*.

In *Mika*, the plaintiff was injured in a shooting at a billiards club and sued a corporate officer of the club's parent's company who was responsible "for the company's overall profitability, not the day-to-day operations of the subsidiary companies." 2013 WL 6835297 at *1. Here, in contrast, Rothschild appears to have personally negotiated with and made the sale to Sean Taylor and personally made the representations the Taylors alleged were harmful. In *Anglin*, the plaintiff purchased car insurance in California, was in the process of moving to Washington, was involved in a car accident in Washington, and attempted to assert jurisdiction over the California insurer based on the insurer's registration to do business in Washington and based on its communication with the plaintiff investigating the accident. 2013 WL 1076538, at *3–4. The insurer understood itself to be entering a relationship with a California consumer for state-based car insurance and only communicated with the plaintiff in Washington once he reported an accident there. In contrast, Rothschild affirmatively attempted to register as a franchisor in Washington, affirmatively offered franchisee opportunities for operation in Washington, and participated in the sale and anticipated ongoing business relationship with a franchisee in Washington. Construing all doubts in the Taylors' favor, Rothschild can be said to have both purposefully directed activity at Washington causing harm he likely knew would be suffered in Washington, *Morrill*, 873 F.3d at 1142, and purposefully availed himself of the privilege of doing business in Washington,

*Schwarzenegger*, 374 F.3d at 802. Therefore, the Court denies his motion to dismiss for lack of specific personal jurisdiction.

**B.      Standard on Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

The remainder of Rothschild's bases for dismissal appear to fall under Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted.[4] Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as true and construed in the light most favorable to the nonmoving party. *Everest & Jennings*, 23 F.3d at 228. To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. When deciding a motion to dismiss, the Court considers facts alleged in the pleadings, and does not consider additional allegations made in briefing. Fed. R. Civ. P. 12(d).

The Court will first address Rothschild's two contract-based defenses to the Taylors' claims: (1) the contracted statute of limitations has run and (2) the Taylors' claims are based on Rothschild's statements which are extrinsic to the contract and "on

---

[4] While some of Rothschild's arguments allude to the Court's potential lack of jurisdiction, which would be properly brought under Fed. R. Civ. P. 12(b)(1) and could include an evidentiary hearing, the parties' stipulated motion to stay, Dkt. 23, provides that Rothschild's instant motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(2) & (6).

which the Taylors contractually represented and warranted they did not rely." Dkt. 7 at 2. Next, Rothschild makes three arguments related to preclusion, which the Court will not consider on the instant motion to dismiss. Finally, the Court will address Rothschild's motion in the alternative that the Court compel the Taylors' claims to arbitration and stay the action.

### 1.    Contractual Defenses

As noted, motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri*, 901 F.2d at 699. Rothschild's defenses invoking the contract's provisions are not made on either of these bases. First, Rothschild argues that under the Franchise Agreement, the parties agreed that "any claims under, arising out of, or related to, this Agreement must be brought within two (2) years of the date on which the underlying cause of action accrued." Dkt. 7 at 14 (citing Dkt. 8-1 at 49). Second, Rothschild argues that "the plain language of the Franchise Agreement and [Franchise Disclosure Documents]" defeat the Taylors' misrepresentation claims because in those documents "the Taylors expressly and repeatedly agreed that no representations regarding financial performance or success had been made to them outside of what they received in the Franchise Agreement and the [Franchise Disclosure Documents] . . . ." Dkt. 7 at 16.

Taking the Taylors' material allegations as true and construing them in the light most favorable to them as the nonmoving party, *Everest & Jennings*, 23 F.3d at 228, Rothschild either: (1) fraudulently induced the Taylors to purchase the franchise; (2) sold them a franchise in violation of Washington law; or (3) in the absence of a contractual

relationship, improperly took a benefit from them and retained it. Dkt. 1-1, ¶¶ 29–50. Rothschild argues that the "misrepresentation claims are defeated by the plain language of the Franchise Agreement and the FDD and should be dismissed." Dkt. 7 at 16. Rothschild, however, fails to clearly articulate how the defense of an existing contract should be applied on a motion to dismiss the Taylors' tort claims. Instead, he provides a collection of sporadic authorities with little to no analysis. *Id.* at 16–18. If Rothschild seeks a ruling that an existing contract precludes the Taylors' tort claims, then he may file a motion for summary judgment that first seeks a ruling that the contract is valid and enforceable followed by a ruling that certain provisions within the contract bar the claims. *See, e.g.*, *FMC Techs., Inc. v. Edwards*, C05-946C, 2007 WL 1725098, at *2 (W.D. Wash. June 12, 2007), *aff'd*, 302 Fed. Appx. 577 (9th Cir. 2008). To the extent Rothschild attempts to argue that the Taylors' claims fail for lack of a cognizable legal theory, the Court denies the motion.

### 2. Res Judicata and Collateral Estoppel

 "Res judicata bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992). "This circuit adheres to the rule that '[u]nder Rule 13(a) a party who fails to plead a compulsory counterclaim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again.'" *Baker v. Southern Pac. Transp.*, 542 F.2d 1123, 1126 (9th Cir. 1976) (quoting *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir. 1967)). Regarding res judicata, Rothschild

argues that "[t]o the extent [the Taylors' claims] were <u>not</u> asserted in the Arbitration, the deadline to do so has passed," and "[t]o the extent [the Taylors' claims] <u>were</u> asserted in the Arbitration, the Arbitrator dismissed them." Dkt. 7 at 12.

"To foreclose relitigation on an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark*, 966 F.2d at 1320–21 (citing *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985)). Regarding collateral estoppel, Rothschild argues that the that the Court should treat the arbitrator's dismissal of the Taylors' arbitration counterclaims "as a final judgement on the merits, for preclusion analysis." Dkt. 7 at 13 (citing Dkt. 8-1 at 334).

Res judicata and collateral estoppel are affirmative defenses. *Blonger-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971). Affirmative defenses are not properly raised on a motion to dismiss if they involve disputed questions of fact. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1009 (9th Cir. 2014). According to Fed. R. Civ. P. 12(d) "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court the motion must be treated as one for summary judgment under Rule 56." There are two exceptions to this rule. First, a court may consider material submitted as part of the complaint or material under the incorporation by reference doctrine which "permits a court to consider a document 'if the plaintiff refers extensively to the document or the document forms the basis of the

plaintiff's claim.'" *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1162–63 (9th Cir. 2019) (citing *United States v. Ritchie*, 342 F.3d 902, 908 (9th Cir. 2003)). Second, a court may take judicial notice of matters of public record. *Id*. at 789 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)); *see also Madeja v. Olympic Packers, LLC*, 310 F.3d 628 639 (9th Cir. 2002) (district court did not abuse its discretion in declining request for judicial notice of unauthenticated bankruptcy proceedings).

While the parties agree that arbitration is ongoing, Rothschild argues that the question of the Taylors' counterclaims in arbitration has been conclusively decided, Dkt. 7 at 13, but the Taylors argue that their counterclaims were not actually litigated in the arbitration proceedings. Dkt. 12 at 14. While deciding the impact of decisions in arbitration on Rothschild's preclusion defenses may ultimately be a question of fact or a question of law, in either scenario the Court would need to review the arbitration proceedings. Both parties provide declarations from their attorneys which have exhibits from or related to the arbitration proceedings. Dkt. 13; Dkt. 17. However, these documents present a fragmented picture of the ongoing proceedings, no final decision on the merits, and are not authenticated by the arbitrator such that the court may take judicial notice of them. *Id*.

Rothschild asks that "[t]o the extent the Court cannot consider any evidence for any aspect of the instant Motion," the Court set aside that aspect evidence rather than converting the motion to one for summary judgment. Dkt. 7 at 18; Dkt. 16 at 12. Rothschild argues that the arbitration proceedings are referenced in the complaint. Dkt. 7 at 19; Dkt. 16 at 12. Upon review, the complaint mentions arbitration once, alleging in

the factual history that after Taylors filed a complaint with the DFI, Party Princess "retaliated by filing an arbitration claim . . . forcing Taylor to arbitrate in Colorado, in violation of [the Franchise Investment Protection Act]." Dkt. 1-1, ¶ 25. This paragraph of the complaint is not sufficient for the Court to find that arbitration-related materials are referred to extensively in the complaint, and none of the arbitration documents form the basis of the Taylors' claims. *Steinle*, 919 F.3d at 1162–63. While the Taylors do put forward arbitration materials in support of their opposition, the arbitration materials the Taylors argue contain the facts relevant to preclusion are different from the materials Rothschild puts forward, so the parties cannot be said to be operating from an undisputed set of facts on this question. *Compare* Dkt. 13 *with* Dkts. 8, 17.

Therefore, the Court finds that on the record before it, it cannot consider Rothschild's preclusion defenses under a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Per Rothschild's request, the Court will not convert the motion to one for summary judgment under Fed. R. Civ. P. 56. The Court denies the motion on these issues without prejudice.

**C. Motion to Compel Arbitration**

If the Court does not dismiss the Taylors' claims, Rothschild asks it to compel the claims to arbitration. Dkt. 7 at 20. The parties' briefing on this issue is minimal, limiting the Court's ability to provide a thorough analysis.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA supports a liberal policy favoring arbitration and reinforces the "fundamental principle that arbitration is a

matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA requires courts to "rigorously enforce" agreements to arbitrate, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), to ensure that private contractual provisions "are enforced according to their terms." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

The party seeking to compel arbitration has the burden of proving that an arbitration agreement exists and that it applies to the dispute at issue. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). Rothschild devotes the majority of his briefing on compelling arbitration to arguing that he should be permitted to invoke the arbitration clause even though he is a nonsignatory. The Court agrees. *All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*, No. C13–2001RAJ, 2014 WL 1870821 at *3 (W.D. Wash. May 8, 2014) ("jurisdictions across the country uphold a nonsignatory employee's right to invoke an arbitration clause defensively in a case arising out of his acts on behalf of his signatory employer."). However, the issue of who may invoke a contract's provision does not resolve the larger question of whether arbitration should be compelled.

Parties may generally put more limits on their conduct in contract than exist in law, but that right to contract may be limited by statute or unconscionability. *See, e.g.*, *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 355–56 (2004). Here, FIPA provides that "[a]ny agreement, condition, stipulation, or provision, including a choice of law

provision, purporting to bind any person to waive compliance with any provision of this chapter or any rule or order hereunder is void." RCW 19.100.220(2).

While Rothschild argues that DFI approved the arbitration site clause in the Franchise Agreement, the evidence he cites does not clearly support that conclusion. Rothschild cites emails between his counsel Douglas Ferguson ("Ferguson") and the DFI in December 2015 and January 2016, which he argues show that DFI "approved Party Princess's Franchise Agreement featuring the Colorado arbitration venue as conforming with FIPA and other state law." Dkt. 16 at 12 n.7 (citing Dkt. 17-1 at 15–17). He also argues the emails show that "DFI and Party Princess expressly discussed the Colorado venue issue and agreed the clause was permissible." *Id.* The emails show Ferguson inquired about the status of DFI's decision, DFI responded expressing concerns with Party Princess's language on the site of arbitration, and Ferguson sent an email in response. *See* Dkt. 17-1 at 15–17. Approximately a fourth of Ferguson's inquiry email is redacted, two out of the three paragraphs in DFI's response are redacted, and Ferguson's entire response to DFI is redacted. *Id.* The Court is unable to draw a conclusion about what DFI found from these emails.

Moreover, in support of his reply, Rothschild provides the declaration of his attorney Curt Hineline, which includes an excerpt of a DFI "Statement of Charges and Notice of Intent to Enter Order to Cease and Desist" (the "Notice") to Party Princess dated April 2018. Dkt. 17, ¶ 5.[5] While Hineline declares that "[s]ince receipt of DFI's

---

[5] The excerpt contains the first and last page of the notice but omits the intervening six pages. *See* Dkt. 17-1 at 3–4.

Notice, my office has been engaged in administrative proceedings with DFI to resolve certain factual questions," *id.*, and the Notice provides that Rothschild and Party Princess may request a hearing, the Notice states that the Securities Administrator "has reason to believe" that Rothschild and Party Princess have each violated the FIPA and these violations "justify the entry of an order against each to cease and desist from these violations." Dkt. 17-1 at 3. The "Conclusions of Law" section states that Rothschild and Party Princess made false statements or omissions in connection with the offer and sale of franchises, violated FIPA by selling a franchise without being registered with Washington to do so, and violated FIPA by failing to provide franchisees with franchise disclosure documents which complied with FIPA. *Id.* at 4. These findings support an inference that Rothschild did not correct the documents he provided to the Taylors as he claimed.

Though not cited by either party, the Court finds that *Allison v. Medicab Intern., Inc.*, 92 Wn.2d 199, 203 (1979) ("*Allison*") appears applicable to this case. There, the Washington Supreme Court found that when parties entered into the franchise agreement voluntarily and with the advice of counsel, and the *arbitration clause* is not part of what was allegedly fraudulently induced, claims of fraud inducing entry into the sale of a franchise may still be properly referred to arbitration. *Allison*, 92 Wn.2d at 203 (citing *Pinkis v. Network Cinema Corp.*, 9 Wn.App. 337, 346 (1978)). The Washington Supreme Court also found that the failure to register under RCW 19.100.020 "does not vitiate the arbitration clause." *Allison*, 92 Wn.2d at 203. *Allison* provides an example of a contract

that was the result of intentional misrepresentation, entered by a franchisor who had failed to comply with FIPA, and yet remained at least partially enforceable.

The Court finds that parties have failed to clearly brief whether a valid and enforceable contract exists between them, and how their claims and defenses might void the contract, result in rescission, make certain provisions voidable, or have some other impact. Even if they did provide more briefing on this issue, it seems more apt for summary judgment instead of a motion to dismiss. In sum, Rothschild has failed to meet his burden to establish that the Court should compel arbitration, and the Court denies his motion on this issue without prejudice.

**D.    Attorneys' Fees**

Rothschild argues that because the Taylors have breached the Franchise Agreement and "instituted unnecessary litigation in violation of the Franchise Agreement's mandatory arbitration provisions, the Taylors are liable for Mr. Rothschild's attorney fees and costs under the plain language of the Franchise Agreement." Dkt. 7 at 23 (citing Dkt. 8-1, §16.3(b)). Consulting the cited provision, the Court finds that the preceding provision provides all disputes shall be subject to arbitration, and the cited provision provides that the arbitrator shall "allocate all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorney's fees of the prevailing party, against the party who did not prevail." Dkt. 8-1 at 47–48. Rothschild has not directed the Court to contracted language providing that in the event one party institutes litigation outside the mandatory arbitration provision, the losing party is liable for the prevailing party's costs. Therefore, the Court will not award attorneys' fees under the

contract. The Court also declines to award fees under RCW 4.28.185(5), which provides that courts may award fees to prevailing defendants personally served outside the state, or under RCW 19.100.190(3), which provides that in suits against franchisors to recover damages sustained by plaintiffs, the prevailing party may in the discretion of the court recover a reasonable attorneys' fee.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Rothschild's motion to dismiss or compel arbitration, Dkt. 7, is **DENIED**.

Dated this 2nd day of May, 2019.

BENJAMIN H. SETTLE
United States District Judge