UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT SEAN TAYLOR, Chapter 7 Trustee for the bankruptcy estate of Robert and Stephanie Taylor,<br><br>                Plaintiff,<br><br>   v.<br><br>MORGAN ROTHSCHILD f/k/a MORGAN HENNING, HAYLEY HENNING, and FRANNET GLOBAL, LLC,<br><br>                Defendants. | CASE NO. C18-5863 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

This matter comes before the Court on Defendant Morgan Rothschild f/k/a Morgan Henning's ("Rothschild") second motion to compel arbitration. Dkt. 27. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

# I.  PROCEDURAL HISTORY

On September 17, 2018, Robert Sean Taylor ("Sean Taylor") and Stephanie Taylor ("the Taylors") filed suit against Rothschild, his ex-spouse Haley Henning ("Henning"), and John Does 1-10 in the Washington Superior Court for Clark County. Dkt. 1-1. On October 25, 2018, Rothschild removed the case to this Court. Dkt. 1. On November 16, 2018, Rothschild moved to dismiss or in the alternative to compel arbitration and stay the case. Dkt. 7. On December 11, 2018, the Court entered a stay pursuant to the parties' stipulation for the parties to pursue settlement discussions and for the Taylors' counsel to seek litigation approval from the Bankruptcy Court. Dkts. 9, 10. On January 7, 2019, the parties agreed to lift the stay and renote the motion. Dkt. 11. On February 24, 2019, the Court granted the Taylors' motion to substitute Chapter 7 Trustee Russell Garrett ("Plaintiff") into the action as Plaintiff in place of the Taylors. Dkt. 19.

On May 2, 2019, the Court denied Rothschild's motion to dismiss or compel arbitration. Dkt. 25. On May 16, 2019, Rothschild filed a second motion to change venue and compel arbitration. Dkt. 27. On May 30, 2019, Plaintiff filed an amended complaint with leave of the Court adding claims against Defendant FranNet Global, LLC. Dkts. 31, 33. On May 31, 2019, Plaintiff responded to Rothschild's motion. Dkt. 34. On June 7, 2019, Rothschild replied. Dkt. 36.

# II.  FACTUAL BACKGROUND

This case involves a dispute between a franchisor and disenchanted franchisees. Rothschild runs Party Princess International ("Party Princess"). Dkt. 1-1, ¶ 2. Henning, his former spouse, worked with Rothschild on the business and advised on franchises. *Id*.

In October 2015, Party Princess filed paperwork to register in Washington as a franchisor, but the filing was unsuccessful. *See* Dkt. 8, Declaration of Morgan Rothschild ("Rothschild Decl."), ⁋ 8.

At some point in 2015, Sean Taylor consulted a franchise broker about investment opportunities who referred him to Rothschild. Dkt. 1-1, ⁋ 15. At this time, all parties resided in California. *See* Dkt. 12 at 2, 3; Dkt. 16 at 6. Sean Taylor and Rothschild spoke by phone, and Rothschild "informed Taylor that a Google advertising campaign alone in Taylor's prospective territory would generate at least $100,000 per year for Taylor," but Rothschild "could not put the projections in writing due to regulatory prohibitions." Dkt. 1-1, ⁋ 17. Rothschild also told Sean Taylor that meeting Party Princess's requirement that each franchise host 40 parties per month would be "easily achievable." *Id.* ⁋ 18.

On December 4, 2015, Sean Taylor purchased a Party Princess Franchise, Dkt. 35, ⁋ 5, "for the Washington territory." Dkt. 1-1, ⁋ 21.[1] The parties' contract included a Franchise Agreement, a Washington Rider to the Franchise Agreement, a Franchise Disclosure Document, and an "Addendum to the Party Princess USA LLC Disclosure Document for the State of Washington" (the "Washington Addendum"). *See* Dkt. 8; Dkt. 8-1. The contract's documents contained a number of provisions regarding arbitration. In section 16.3, Dispute Resolution, the Franchise Agreement provided:

> a. Except as otherwise provided herein, any dispute, claim or controversy arising out of or relating to this Agreement, the breach hereof, the rights and obligations of the parties hereto or the relationship between the parties,

---

[1] Rothschild argues that "[a]pproximately two-thirds of the Taylors' franchise territory was located in Portland, Oregon; the remaining third was located in Vancouver, Washington." Dkt. 7 at 3 (citing Rothschild Decl., ⁋ 2).

or the entry, making, interpretation, or performance of either party under this Agreement . . . shall be settled by arbitration administered by the American Arbitration Association . . . .

b. Any arbitration shall take place before a sole arbitrator in Denver, Colorado or, if our headquarters is no longer located in Denver, Colorado, then the arbitration shall take place in the city which is our principal place of business at the time arbitration is commenced. You agree that conducting the arbitration where we are located is appropriate due to the multiple locations throughout the United States where our franchises are located.

Dkt. 8-1 at 47.[2,3] The Washington Rider to the Franchise Agreement stated in part:

Arbitration shall take place at a site to be determined, at the time of arbitration, by the arbitrator appointed by the Denver, Colorado office of the American Arbitration Association, as applicable, but only if there is a valid and legal restriction under [FIPA] to prohibit Franchisee and Franchisee from agreeing on the site for arbitration in Denver, Colorado. However, Franchisee and Franchisee do not agree that this is a valid and legal restriction under the Act, and, unless this restriction is found to be valid and legal, the parties agree that arbitration shall take place in Denver, Colorado in accordance with the Franchise Agreement. Franchisee and Franchisee [sic] believe that each of the provisions of the Franchise Agreement, including all venue provisions, are fully enforceable.

Dkt. 8-1 at 75. The Franchise Disclosure Document listed as the first "Risk Factor" of buying a franchise that:

THE FRANCHISE AGREEMENT REQUIRES YOU TO RESOLVE DISPUTES WITH US BY MEDIATION AND ARBITRATION ONLY IN COLORADO. OUT-OF-STATE MEDIATION AND ARBITRATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST YOU MORE TO MEDIATE OR ARBITRATE WITH US IN COLORADO THAN IN YOUR OWN STATE.

---

[2] The Court cites the ECF page numbers.

[3] The Franchise Disclosure Document's "Renewal, Termination, Transfer and Dispute Resolution: The Franchise Relationship" also identifies this section of the Franchise Agreement as controlling dispute resolution Dkt. 8-1 at 114–17.

Rothschild Decl. ⁋ 3; Dkt. 8-1 at 84. It listed effective dates of the Franchise Disclosure

Document for some states, but the effective date for Washington was blank. Dkt. 8-1 at

85. The Washington Addendum to the Franchise Disclosure Document featured an

arbitration clause which was functionally identical to the Washington Rider to the

Franchise Agreement. Dkt. 8-1 at 137.  As part of the purchase, "[Rothschild] caused

Party Princess to send written documents to Taylor stating that the worst-case-scenario

revenue data for Taylor would be $90,000 in gross revenues based solely on spending

$2,190 per month on the Google advertising campaign," Dkt. 1-1, ⁋ 21.

On December 18, 2015, the Washington Department of Financial Institutions

("DFI") responded to Party Princess's counsel notifying him of additional steps Party

Princess would need to take to secure registration as a franchisor in Washington,

including revisions to the Washington Addendum to the Franchise Disclosure Document

regarding arbitration and to the Washington Addendum to the Franchise Agreement

regarding arbitration. Dkt. 35-2 at 3. In January 2016, according to Rothschild, Party

Princess provided supplemental or amended information to the DFI and successfully

registered as a franchisor. Rothschild Decl. ⁋ 8. In February 2016, Rothschild "notified

Mr. Taylor that Party Princess's franchisor registration had not been effective in

Washington at the time the Taylors originally signed the Franchise Agreement." *Id*. On

February 27, 2016, Rothschild declares that he sent Sean Taylor a new franchise

agreement by email to sign. *Id*.[4] Sean Taylor testified in his deposition that he had no

---

[4] It appears that Rothschild sent Sean Taylor a version of the Franchise Agreement with
the same Washington Rider found in the December 4th Franchise Agreement. Dkt. 35; Dkt. 35-6.

recollection of receiving the email and no recollection of responding to it. Dkt. 34 at 3 (citing Dkt. 35, ⁋ 10; Dkt. 35-5).

Rothschild declares that the Taylors moved to the Pacific Northwest "sometime during 2016." Rothschild Decl. ⁋ 2. The Taylors alleged that despite Sean Taylor's continued efforts to operate the franchise, "including fully funding the marketing campaign, [he] never achieved the results promised by [Rothschild]." Dkt. 1-1, ⁋ 24.

In October 2017, the Taylors filed a complaint about Party Princess with the DFI's Securities Division. *Id*. ⁋ 25. Party Princess then filed an arbitration claim "seeking to terminate Taylor's franchise," and the parties began arbitration in Colorado. *Id*. The Taylors filed for bankruptcy on September 27, 2018. Dkt. 15 at 3; Dkt. 8-1 at 249–304. According to Rothschild's counsel, the arbitration proceedings have been suspended since September 27, 2018 after the Taylors filed for bankruptcy and "[t]here has been no arbitration hearing to date, nor is a hearing date scheduled." Dkt. 37, Third Declaration of Curt Roy Hineline, ⁋ 7. As noted, the Taylors filed this lawsuit on September 17, 2018. Dkt. 1-1. The Taylors claim that they have lost "well over $200,000" in investments in the franchise. *Id*. ⁋ 28.

The Taylors assert four causes of action against Rothschild—intentional misrepresentation, negligent misrepresentation, violation of Washington's Franchise Investment Protection Act ("FIPA"), RCW Chapter 19.100, and Washington's Consumer Protection Act ("CPA"), RCW Chapter 19.86, and unjust enrichment. *Id*. ⁋⁋ 29–50.

# III. DISCUSSION

Rothschild asks the court to compel the parties to arbitration and dismiss or stay the instant action pending resolution of arbitration Dkt. 27 at 2.

## A. Standard on a Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA supports a liberal policy favoring arbitration and reinforces the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA requires courts to "rigorously enforce" agreements to arbitrate, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), to ensure that private contractual provisions "are enforced according to their terms." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

On review of a motion to compel arbitration, the court's role is limited to determining (1) whether the parties entered into a valid agreement to arbitrate and if so (2) whether the present claims fall within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proof on these questions. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). The FAA requires courts to stay proceedings when an issue before the court can be referred to arbitration. 9 U.S.C. § 3.

The parties agree that their agreement directs disputes concerning the validity or scope of arbitration to a court, not to the arbitrator. Dkt. 34 at 6; Dkt. 36 at 2 n.1. The Ninth Circuit explains that "our case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself." *Cox*, 533 F.3d at 1120.

Rothschild's prior motion to compel arbitration was a secondary component of his prior motion to dismiss. Dkt. 7. The Court agreed with Rothschild's argument that he should be permitted to invoke the arbitration clause even as a nonsignatory. Dkt. 25 at 18 (citing *All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*, No. C13–2001RAJ, 2014 WL 1870821, at *3 (W.D. Wash. May 8, 2014) ("jurisdictions across the country uphold a nonsignatory employee's right to invoke an arbitration clause defensively in a case arising out of his acts on behalf of his signatory employer.")). On the remainder of the issues relating to arbitration, the parties' briefing was minimal and constrained the Court's ability to conduct thorough analysis. Dkt. 25 at 17. The Court concluded that Rothschild had failed to meet his burden to show that the Court should compel arbitration and denied the motion without prejudice. *Id*. at 21.

Rothschild's renewed motion argues that "[w]ith attention only to the plain language of the Franchise Agreement at issue and the related controlling authority, arbitration is mandatory." Dkt. 27 at 9–10. Plaintiff makes two counter-arguments. First, Plaintiff argues that the arbitration provision is void pursuant to Washington law. Dkt. 34 at 5. Second, Plaintiff argues that the Taylors never agreed to the version of the

arbitration clause that Rothschild is attempting to enforce and argues that Rothschild

misleadingly represents that the DFI approved this version of the clause. *Id.*

### 1.      Scope of the Arbitration Agreement

In determining whether to compel arbitration, the Court must determine whether

the dispute "falls within the scope of the parties' agreement to arbitrate." *Chiron Corp.*,

207 F.3d at 1130. Plaintiff's initial argument is that it is unclear which arbitration clause

Rothschild seeks to enforce. Dkt. 34 at 3–5.

Plaintiff admits that the original Franchise Agreement that the Taylors and Party

Princess executed in December 2015 contains an arbitration clause. *Id.* at 1. Plaintiff's

argument that Rothschild's motion is vague about what language it claims is operative

has some merit, as Rothschild's argument that the DFI approved revised language is

confusing. Dkt. 27 at 4 ("the franchise agreement thereafter included a Washington

Rider").  While Rothschild's argument would appear to imply that revised language was

somehow incorporated into the parties' contract, Rothschild provides no evidence in

support of this proposition and argues elsewhere in his motion that the Franchise

Agreement executed in December 2015 is the version "which all parties assented to."

Dkt. 27 at 3 (citing Dkt. 8-1, Exhibit A).  Moreover, Sean Taylor testified at his

deposition that he had no recollection of seeing the email containing the revised contract

or responding to it, Dkt. 35-5 at 7.

Therefore, the Court concludes that it is sufficiently clear that Rothschild is

attempting to enforce the arbitration clause as set out in the parties' original agreement

and that whatever language Rothschild may have negotiated with DFI after December 4,

2015 is not the contracted language between the parties and does not govern their dispute. *Jones v. Best*, 134 Wn.2d 232, 240 (1998) ("Mutual assent is required and one party may not unilaterally modify a contract.") (citing *In re Relationship of Eggers*, 30 Wn. App. 867 (1982)). While Plaintiff argues that Rothschild's briefing on this issue creates a dispute of material fact as to "whether the Washington Rider was later incorporated into the Agreement, and whether it was approved by DFI," Dkt. 34 at 8, the Court finds that the arbitration provision in the original agreement may be dispositive. The question of what language DFI may have approved is likely relevant only as evidence of whether or not the language in the executed contract is valid under Washington law.

Beyond their dispute regarding possible contract modification, the parties do not dispute whether Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, violation of Washington's FIPA and CPA, and unjust enrichment fall within the scope of the original contracted arbitration provision. Once a court establishes that a claim is within the scope of an arbitration agreement, the agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.

### 2.     Valid Agreement to Arbitrate

To determine whether the parties agreed to arbitrate, courts apply ordinary state-law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Washington, "[t]he role of the court is to determine the mutual intentions of the contracting parties according to the reasonable meaning of their words and acts." *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 837 (1986). As the Court

noted in its previous order, parties may generally put more limits on their conduct in contract than exist in law, but the right to contract may be limited by statute or unconscionability. Dkt. 25 at 18 (citing *Alder v. Fred Lind Manor*, 153 Wn.3d 331, 355–56 (2004)). Notwithstanding the FAA's presumption in favor of arbitrability, a court may consider these and other state law contract defenses such as fraud and duress in determining whether an arbitration provision is valid. *See* 9 U.S.C. § 2; *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

Plaintiff argues that the arbitration provision violates Washington law and is void pursuant to RCW 19.100.220(2). Dkt. 34 at 9. RCW 19.100.200(2) provides that "[a]ny agreement, condition, stipulation or provision, including a choice of law provision, purporting to bind any person to waive compliance with any provision of this chapter or any rule or order hereunder is void." Therefore, it is possible that the arbitration provision could be void as contrary to law.

However, for the proposition that the arbitration provision actually "purport[s] to bind any person to wave compliance with any provision of this chapter," Plaintiff relies only on an interpretive statement from the Securities Administrator of the DFI. Dkt. 34 at 10. ("The Clause did not comply with the Interpretive Rule and deprived the Taylors of a fundamental protection of FIPA in violation of RCW 19.100.220.") The Interpretive Statement concluded that under RCW 19.100.180(1), which requires that parties to a franchise agreement deal with each other in good faith, and RCW 19.100.180(2), which identifies a contract imposing an unreasonable standard of conduct on a franchisee as an unfair act or practice, "it is not in good faith, reasonable, or a fair act and practice for a

franchisor to require an arbitration clause in a franchise agreement that unfairly and non-negotiably sets the site of arbitration in a state other than the state of Washington." Washington Department of Financial Institutions, Securities Administrator, FIS-04, Franchise Act Interpretive Statement RE: Arbitration Site (1991).

Plaintiff concedes that this Interpretive Statement does not have the force of law but proceeds to argue that because RCW 19.100.200(2) renders provisions waiving compliance with Washington law void, the arbitration provision in the Franchise Agreement is void. Dkt. 34 at 10–11. The Court finds that by conceding that the Interpretive Statement does not have the force of law, Plaintiff concedes that the Interpretive Statement is not a "rule or order" pursuant to FIPA, and thus cannot in fact render a contracted provision void because that provision purports to waive compliance with Washignton law. *See* RCW 19.100.200(2). Plaintiff also quotes the DFI's Statement of Charges and Notice of Intent to Enter Order to Cease and Desist in the DFI's investigation of Party Princess taking issue with the arbitration clause's venue provision, but again does not argue or provide authority for the proposition that DFI's Statement represents a final order or has the force of law. Dkt. 34 at 9 (citing Dkt. 35-1).[5] Even if the Interpretive Statement did control, Plaintiff does not cite facts relevant to contract formation which would tend to show that Rothschild or Party Princess unfairly refused to

---

[5] The Court was unable to locate the quoted statement either within the exhibits to Dkt. 34 or elsewhere in the record but finds that the accuracy of the quoted language would not change its conclusion.

negotiate the arbitration clause. Therefore, the Court declines to deny the motion to compel on this basis.

In the alternative, Plaintiff argues that "[w]hile the Interpretive Statement does not have the force of law, Party Princess and Rothschild, its principal, by offering a franchise in Washington, agreed to be bound by its terms." Dkt. 34 at 10 (citing Dkt. 28, Second Declaration of Curt Roy Hineline). Plaintiff continues "Party Princess's approval was contingent on compliance with the interpretive statement," and argues that the DFI would have required a different arbitration provision had Party Princess properly registered with the state prior to the sale to the Taylors. Dkt. 34 at 10.

All of these things may be true. However, the Court's previous order explained the Court's belief that *Allison v. Medicab Intern., Inc.*, 92 Wn.2d 199, 2013 (1979) ("*Allison*") likely controlled the outcome in the case at bar. In *Allison*, the Washington Supreme Court found that when parties entered into a franchise agreement voluntarily and with the advice of counsel and the *arbitration clause* itself is not part of what was allegedly fraudulently induced, claims of fraud inducing entry into the sale of a franchise may still be properly referred to arbitration. *Allison*, 92 Wn.2d at 203. The Washington Supreme Court further found that the failure to register under RCW 19.100.020 "does not vitiate the arbitration clause." *Id.*

In his opposition, Plaintiff distinguishes *Allison* as dealing with "an unregistered franchise agreement fraudulently introduced" in contrast to this case which involves an unregistered franchise agreement fraudulently introduced *and* a void arbitration clause. Dkt. 34 at 11. The Court has concluded that Plaintiff failed to show that the arbitration

clause is void as violating Washington law. Plaintiff does not argue the arbitration clause itself was fraudulently induced, as *Allison* provides, and makes no argument on other grounds to strike the arbitration clause, such as procedural or substantive unconscionability.[6] The Court finds that Plaintiff has failed to successfully distinguish the Taylor's circumstances from the circumstances decided by the Washington Supreme Court in *Allison*.

Finally, Plaintiff argues that validity of the arbitration clause should be decided on summary judgment and the Court should consider facts from the State of Washington's investigation in its decision. Dkt. 34 at 2. The Court finds that Plaintiff has failed to show authority for the proposition that facts from an apparently ongoing agency investigation could be dispositive on the issue of whether a contractual provision is void pursuant to RCW 19.100.200(2). Therefore, the Court declines to deny the motion to compel on any of the bases discussed.

### 3. Venue

As part of his request that the Court compel arbitration, Rothschild presents three options on the question of where arbitration should be compelled: (1) compel Plaintiff to raise his claims in the ongoing arbitration in Colorado, (2) compel the parties to begin a new arbitration proceeding in Colorado, or (3) compel the parties to begin a new arbitration proceeding in Washington. Dkt. 27 at 2. Plaintiff argues that the arbitrator in

---

[6] Plaintiff mentions unconscionability only as one item in a list of issues which Plaintiff identifies as disputed and argues may only be resolved on summary judgment, not on the instant motion to compel. Dkt. 34 at 15.

the ongoing arbitration already rejected the Taylor's motion to transfer venue from Colorado to Washington on the basis of the parties' arbitration clause, which as noted, Plaintiff believes is invalid. Dkt. 34 at 5–6 (citing Dkt. 28-1 at 18). Rothschild argues that even if the provision selecting a forum outside of Washington is invalid, this provision "can be easily severed from the rest of the Franchise Agreement." Dkt. 36 at 2.

Plaintiff focuses his efforts on persuading the Court to deny the motion to compel outright or deny it in favor of summary judgment and does not make an unconscionability argument about the location of arbitration. Dkt. 34. While the Court may clearly infer from Plaintiff's motion that he opposes arbitration in Colorado, the Court has rejected Plaintiff's bases to find the arbitration clause void. Thus, the Court must enforce the parties' contract by its terms, *Mitsubishi Motors*, 473 U.S. at 626; *Stolt–Nielsen*, 559 U.S. at 684, which provides:

> Arbitration shall take place at a site to be determined, at the time of arbitration, by the arbitrator appointed by the Denver, Colorado office of the American Arbitration Association, as applicable, but only if there is a valid and legal restriction under [FIPA] to prohibit Franchisee and Franchisee from agreeing on the site for arbitration in Denver, Colorado.

Dkt. 8-1 at 75. Because Plaintiff has failed to provide a basis for a "valid and legal restriction" to prohibit the parties' agreement to Denver, Colorado as the site for the venue decision to be made, the Court compels the parties to initially submit to arbitration in Denver, Colorado.

**B.    Judicial Estoppel**

"Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."

*Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104, 1114–15 (W.D. Wash. 2011)

(citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)).

Judicial estoppel is applied "because of 'general consideration[s] of the orderly

administration of justice and regard for the dignity of judicial proceedings,' and to

'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm*

*Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893 F.2d

1033, 1037 (9th Cir. 1990)). "[J]udicial estoppel 'is an equitable doctrine invoked by a

court at its discretion.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). In the Ninth Circuit, three factors

inform a court's decision to invoke judicial estoppel: (1) whether the later position is

clearly inconsistent with the earlier position, (2) whether judicial acceptance of the

inconsistent position in the later proceeding creates a perception that one court or the

other was misled, and (3) whether the party putting forward the inconsistent position

would be unfairly advantaged if not estopped. *Kobold v. Good Samaritan Reg'l Med.*

*Ctr.*, 832 F.3d 1024, 1045 (9th Cir. 2016) (internal citations omitted).

Plaintiff argues that even if the arbitration provision is valid, Rothschild should be

estopped from invoking the contract's arbitration clause because "when the Taylors

attempted to join him into the Colorado arbitration proceedings, Rothschild successfully

objected and was not joined as a party." Dkt. 34 at 2. Plaintiff cites the declaration of its

counsel Douglas Smith, which states that counsel for Party Princess objected to the

inclusion of third-party claims against Rothschild in arbitration leading to the arbitrator's

decision to decline jurisdiction over claims against Rothschild. *Id.* at 12 (citing Dkt. 14, Declaration of Douglas Smith, ¶¶ 4–5).

Rothschild counters that the Taylors sought to add six third-party defendants of whom Rothschild was only one, never brought a formal motion in arbitration for the addition of parties, and the decision the arbitrator issued declining jurisdiction over nonsignatories "is not clear that it even applied to 'signatory' Rothschild." Dkt. 36 at 3. Rothschild argues that Party Princess's argument against the addition of additional parties to arbitration as compared to his current request to invoke the contract's arbitration clause does not rise to the level of clear inconsistency for the purposes of judicial estoppel. Dkt. 36 at 10.[7] Rothschild's counsel submitted a declaration explaining that though he currently represents Rothschild, at the time of the Taylors' request to add parties to arbitration he represented Party Princess only. Dkt. 37, ¶ 4. Rothschild's counsel explained that he recalls arguing before the arbitrator that Party Princess opposed adding all six additional parties "because it seemed obstructionist, wholly unnecessary, and likely to seriously complicate an otherwise simple breach of contract action . . . ." *Id.*[8] As an exhibit to the same declaration, Rothschild's counsel submits an unauthenticated order from the arbitration proceedings, titled "Preliminary Hearing and Scheduling Order #1"

---

[7] As the Court noted in its previous order, the parties each put forward selected documents from their ongoing arbitration proceedings which present a fragmented picture of the ongoing proceedings and are not authenticated by the arbitrator such that the court may take judicial notice of them. *See* Dkt. 25 at 16.

[8] Rothschild's counsel admits that in an earlier declaration submitted in this litigation he declared in error that Party Princess did not oppose joining Rothschild as a party in arbitration. *Id.* (citing Dkt. 17, First Declaration of Curt Roy Hineline).

which states in item number twenty-two, titled "Miscellaneous" that "[t]he Arbitrator denies Respondents' Motions to Stay. The Arbitrator declines to assume jurisdiction over third-parties, nonsignatories to the Franchise Agreement, against which Respondents wish to assert counterclaims within this arbitration." Dkt. 37-1 at 101.

The Court finds this is a close question based on unclear facts. Rothschild, as Party Princess's sole principal and employee, was almost certainly involved in Party Princess's counsel's representations in arbitration. Thus, relying on that distinction to find that Party Princess's resistance to joining Rothschild as a party to arbitration cannot conflict with Rothschild's current effort to compel arbitration is questionable. It is difficult for the Court to assess the balance of equities based on conduct in the underlying proceeding for which it does not have authenticated records or a final order— for example, it may be that the arbitrator was misled into believing the claims against Rothschild in his individual capacity were outside the jurisdiction of the arbitration, or it may be that the arbitrator agreed with Party Princess's argument at the time that those claims were obstructionist or duplicative of the Taylors' counterclaims against Party Princess. *See* Dkt. 37, ¶ 6 (citing Dkt. 8-1 at 334). As the Court noted in its previous order, without a copy of the arbitration records authenticated by the arbitrator, the Court may not take judicial notice of the arbitration proceedings, *see* Dkt. 25 at 16, and it appears those proceedings are currently stayed or otherwise suspended, *see* Dkt. 37, ¶ 7.

It is similarly difficult to assess whether compelling arbitration of the instant claims would create a perception that the arbitrator was misled. *Kobold*, 832 F.3d at 1045. From the Court's best effort to understand the record, Rothschild could be unfairly

advantaged if the Court compelled Plaintiff's current claims to the suspended arbitration, because it is possible that Rothschild is not properly a party to that proceeding and also appears possible that the Taylors' ability to prosecute their claims in that arbitration has been foreclosed based on their failure to pay filing fees, which may have been impacted by their bankruptcy. *See id*.; *see also* Dkt. 8-1, Arbitration Order Dismissing Respondent's Counterclaims, at 333 ("Respondents Sean and Stephanie Taylor filed counterclaims in this matter on January 10, 2018, but failed to pay the required administrative fee for those counterclaims."). However, it is less clear that Rothschild would be advantaged in a new arbitration proceeding now that the Taylors' claims are represented by Plaintiff, the Chapter 7 Trustee.

Having found that the contracted arbitration provision is enforceable, considering the Court's obligation to rigorously enforce agreements to arbitrate, *Mitsubishi Motors*, 473 U.S. at 626, and finding the judicial estoppel analysis inconclusive, the Court compels the parties to move to add Rothschild as a party to the current arbitration and move to add Plaintiff's claims against him. If these motions are unsuccessful, the parties shall submit to a new arbitration proceeding in Denver, Colorado where a new venue decision will take place. If these options result in a finding of lack of jurisdiction, the parties shall return to this Court for further proceedings.

## C. Stay

Finally, Rothschild asks the Court to stay the proceedings and extend deadlines while this motion is pending, explaining that Plaintiff has "recently propounded substantial discovery completely unrelated to whether this matter should be arbitrated."

Dkt. 27 at 20. Plaintiff argues that the discovery he seeks "is critical to developing its case, including its defenses to Rothschild's attempts to compel arbitration," giving the example of emails between DFI and Rothschild's counsel. Dkt. 34 at 14. While Plaintiff argues that the Court should deny this motion in favor of summary judgment, Plaintiff does not move the Court to continue the motion pending this discovery. Because the Court now decides the motion, the Court denies the request to stay discovery as moot.

Plaintiff argues, appearing to reference not the stay Rothschild requests but a stay of the entire case while arbitration is pending, that "[e]ven if the case against Rothschild was sent to arbitration, claims against Frannet and Henning remain, and the Trustee would be able to seek third party discovery against Rothschild." Dkt. 34 at 14. Rothschild's counsel appears only on his behalf, not on behalf of these other parties. Therefore, the Court compels only claims between Plaintiff and Rothschild to arbitration and stays only these claims pending arbitration.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Rothschild's motion to compel arbitration, Dkt. 27, is **GRANTED**. The parties shall either address Plaintiff's claims against Rothschild in the current arbitration proceeding or commence a new arbitration proceeding in Denver, Colorado as discussed.  Litigation between these parties shall be stayed pending the conclusion of arbitration. Plaintiff's claims against other Defendants shall not be stayed. Rothschild and Plaintiff shall immediately inform the Court when

arbitration is complete or when the matter is otherwise resolved. In any event, the parties

shall file a joint status report no later than June 1, 2020.

Dated this 12th day of July, 2019.

_____
BENJAMIN H. SETTLE
United States District Judge