The Honorable Judge Benjamin H. Settle

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RUSSELL D. GARRETT, Chapter 7 Trustee for the bankruptcy estate of Robert and Stephanie Taylor,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN HENNING a/k/a MORGAN ROTHSCHILD and HAYLEY HENNING; and FRANNET GLOBAL, LLC,<br><br>Defendants. | Case No. 3:18-cv-5863-BHS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION AND STAY ACTION** |

## I.   INTRODUCTION

This Court has personal jurisdiction over Defendant Hayley Henning ("Henning") because Henning played a key role in inducing Robert "Sean" and Stephanie Taylor ("Taylors") into purchasing an unregistered Party Princess franchise in the state of Washington. Henning held herself out as the founder, co-owner, and creative force behind Party Princess and its affiliated companies, while her then husband, Morgan Henning, a/k/a Morgan Rothschild ("Rothschild") was the operations person. Henning and Rothschild always portrayed themselves to the Taylors as a team and sold the Taylors on the strength of their relationship, both in marriage and in

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 1
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

business—the stability of which was an important factor in the Taylors deciding to buy a franchise and go into business with Henning and Rothschild. Henning also befriended Mrs. Taylor and used their friendship to close the deal. The Taylors later learned that Henning and Rothschild were in the process of divorcing and Rothschild had frozen Henning out of the business and the friendship Henning forged with Mrs. Taylor was aimed at closing the Taylors' purchase of a franchise. Henning's representations and actions subject her to specific jurisdiction in Washington.

Plaintiff does not oppose Henning's motion to compel arbitration. The Court should exercise its jurisdiction over Henning and compel arbitration just as it did in its order denying Defendant Rothschild's motion to dismiss (*DKT* #25) and subsequent order granting Rothschild's motion to compel arbitration (*DKT* #42).

Finally, the Court should not consider Henning's F.R.C.P. 12(b)(6) motion to dismiss for failure to state a claim as this motion must be submitted to the arbitrator. If the Court does consider Henning's F.R.C.P. 12(b)(6) motion, it should deny the motion.

## II.  STATEMENT OF FACTS

As Henning stated in her motion, this Court is familiar with the facts in this case having considered two dispositive motions. To avoid unnecessary repetition, Plaintiff incorporates the facts the Court cites in its May 2, 2019 order denying Rothschild's motion to dismiss (*DKT* #25) and its July 12, 2019 order compelling arbitration (*DKT* #42). Plaintiff also provides the following facts, which are particularly relevant to Plaintiff's response to Henning's motion.

In 2015, Sean Taylor contacted a franchisee broker to inquire about various investment opportunities. *DKT* #33, ¶ 15. Sean and the broker discussed the possibility of opening a Party Princess franchise in Washington, as Sean and his wife were

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 2
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

planning to move to Washington. Party Princess is a franchisor that sells franchises that provide costumed and themed parties, primarily for children. *Id.* at ¶ 12.

During the processes of evaluating whether to purchase a Party Princess franchise, the Taylors attended an event called "Discovery Day" in California. *Id.* at ¶ 19. Mr. Taylor first met Henning at Discovery Day. Prior to the meeting starting, Mr. Taylor sat next to Henning at the meeting tables. Henning introduced herself as the owner of Party Princess along with her husband, Rothschild. *Declaration of Robert Sean Taylor*, ¶ 2. Henning explained the business' history and that she was the founder of the company. Henning explained that she started the business so she could make extra money while she was in college. Her mom made the dresses and she performed. She went through her experiences, as the business grew first with her and a few girlfriends, then later into something bigger after she met Rothschild. *Id.* at ¶ 3.

In this conversation, Henning related her business relationship with Rothschild to the Taylor's relationship, finding it interesting that Mr. Taylor was more operational and Mrs. Taylor was more creative, as that was how she and Rothschild's business partnership worked as well. Henning explained she was very involved in the costuming, the actor/actress programs and training, that she was a marketing expert, and that she created the plan behind the success. Henning said that Rothschild handled the day-to-day operations, but Henning was still very actively involved in the bigger picture items, which is why she was there for Discovery Day. *Id.*

Henning explained that she and Rothschild had spent a lot of time working on the franchise model and she was very interested in providing support to her future business partners. Henning said she knew that many future business partners would be husband and wife teams and she was very excited about that. She described how the business had been so great for her family. Henning said she and Rothschild had a great

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 3
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

relationship, they were able to work creatively together and build something, but at the same time had the extra financial resources to have support with the children and do things that they never could do before. In Mr. Taylor's discussions with Henning regarding Party Princess, Henning always referred to her and Rothschild as "we" and the business as "ours." She never portrayed herself as anything less than an active owner of the business. *Id*.

At Discovery Day, Henning and Mr. Taylor had a direct personal conversation that lasted approximately 30-45 minutes without interruptions. Mr. Taylor told Henning that Mrs. Taylor would be joining them for the dinner portion. Henning said she was very excited to meet Mrs. Taylor and hoped that the Taylors liked what they were hearing and seeing and that they would love to have the Taylors as part of the Party Princess family. *Id.* at 4.

Mrs. Taylor arrived at Discovery Day for dinner and met Henning. At dinner and after, Mrs. Taylor had many conversations with Henning, which included both business and personal topics. Those conversation included their initial meeting on Discovery Day; twice at the Taylors' private residence; again at a Mom's Group dinner; numerous times over the phone; and again at the final business meeting where both Henning and Rothschild were present, just before the documents were signed and the Taylors transferred payment. *Declaration of Stephanie Taylor*, at ¶ 2.

In these conversations both Henning and Rothschild represented themselves as a team, using phrases like "our business," "Morgan and I," "Hayley and I," and "We think." They ensured that not only were they successfully running Party Princess together as partners, but they were very happily married. *Id*. at ¶ 3. Many times Henning told Mrs. Taylor how thankful she was to have such a great marriage and a business that

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 4
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

gave her and Rothschild the resources and flexibility to care for their kids and family in a way that is aligned with their values. *Id*. at ¶ 4.

When Mrs. Taylor met Henning at her home, they discussed topics of nutrition, gardening, holistic lifestyle, children, as well as business. They discussed that both of their husbands were focused on the business and operations aspects and Mrs. Taylor and Henning were focused on the creative aspects. Henning told Mrs. Taylor that there needed to be both personality types for a business to thrive and how thankful she was that she and Morgan were such a united team working together as partners in their business. Henning also told Mrs. Taylor that she could reach out to her anytime for any tips and tricks on how to manage Party Princess successfully. *Id*. at ¶ 5. Henning also texted Mrs. Taylor Party Princess Promotion photos, indicating she was an active participant in the business. *Id*. at ¶ 7.

Henning attended the final business meeting prior to the Taylors signing the documents and transferring money. At the final business meeting Henning explained how she and Rothschild had been seriously considering moving to either the Pacific Northwest or Colorado, and they could not wait to visit, spend time together with their families, and scout the area themselves. *Id*. at ¶ 6.

Mrs. Taylor's relationship with Henning and Henning's representations about the business, her involvement in the business, the lifestyle it afforded her and her husband, and the successful marriage and business partnership she had with her husband, were very important to the Taylors in deciding to purchase a Party Princess franchise. *Declaration of Stephanie Taylor,* at ¶ 8.

After these interactions with Henning, the Taylors purchased a Party Princess Franchise in December 2015 for the Washington territory. (*DKT #* 33, ¶ 21). The Taylors never heard from Henning after they signed their franchise documents. *Id.* at ¶

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 5
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

22. The Taylors later learned that Rothschild and Henning were in the process of divorcing, and Henning claimed in her divorce filings that Rothschild had somehow transferred ownership interest in the business and frozen her out of the operations of the business. *Declaration of Sean Taylor*, ¶ 5. This contradicts the representations Henning made during her active role in courting prospective franchisees and Party Princess' Franchise Disclosure Document, which represents Henning as the founder of Party Princess Productions; the CEO of its parent company, Rothschild Enterprises, Inc.; and part owner and advisor to Party Princess USA, LLC, Party Princess Productions, Chic Party Rentals, Inc., and The Icicles, LLC. (*DKT* #8-1, p. 91).

Henning's assertion that her interactions with the Taylors were merely personal and implying that she was not involved in the business, are also contradicted by statements in her and Rothschild's divorce filings. Henning states, "I am the creative person behind the company. I started the way the company runs, methods to use with marketing and a myriad of other things necessary to establish and run the business." *Declaration of Sean Taylor*, ¶ 6. In her March 14, 2016 declaration, Henning states, "(t)he business I started has really taken off… Commencing in or about January of 2016, I had been participating much more in the business activities. *Id*. at ¶ 7. Moreover, in an email exchange between Rothschild and Page Nicol, a franchise specialist with Defendant FranNet Global, LLC, Page Nicol asked Rothschild whether they had a signing date and deposit for the Taylors. Rothschild's response was, "I emailed him. Will keep you posted. Hayley had a play date with Stephanie last Friday. It went well." *Declaration of Phil Haberthur*, ¶ 2. Henning's "play dates" were part of the plan to induce the Taylors to purchase a franchise.

/ / /

/ / /

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS - 6
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

### III.   ARGUMENT & ANALYSIS

### A.   This Court has personal jurisdiction over Henning.

When a court rules on a motion to dismiss for lack of personal jurisdiction based on affidavits and discovery materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2003) (internal quotation marks and citations omitted). "Additionally, any evidentiary materials submitted on the motion are construed in the light most favorable to the plaintiffs and all doubts are resolved in their favor." *Ochoa*, 287 F.3d at 1187 (internal quotation marks omitted).

To determine whether it has jurisdiction over a defendant, federal courts apply the law of the state in which it sits, provided that law is consistent with federal due process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Washington grants courts the maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Thus, the question before the Court is whether exercising jurisdiction here comports with the limitations imposed by due process. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413 (1984). A court may not exercise jurisdiction over a defendant if that exercise of jurisdiction "offend(s) traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Fair play and substantial justice mandate that a defendant has minimum contacts with the forum state before she may be hailed into a court in that forum. *Id*. The extent of those contacts can result in either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS - 7
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1  (2011). If the requirements for either are met, a court has jurisdiction over the parties. *Helicopteros*, 466 U.S. at 413-14.

### 1. The Court has specific jurisdiction over Henning.

While Plaintiff does not argue the Court has general jurisdiction, the Court does have specific jurisdiction over Henning. Specific jurisdiction permits a court to exercise jurisdiction over a nonresident defendant for conduct that "create(s) a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). To prove that specific jurisdiction exists in a *tort-based action*, a plaintiff must demonstrate that: (1) a defendant purposefully directed its activities at the forum state, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). A defendant purposefully directs its conduct toward a forum state when its actions are intended to have an effect within the state. *Schwarzenegger*, 374 F.3d at 803. This occurs if the defendant: "(1) commit(s) an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Financial Co.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Moreover, specific jurisdiction exists in a *contract-based action* when a defendant purposefully avails himself of the privilege of conducting activities in the forum state. *Schwarzenegger*, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. In return for the benefits and protections of the forum's laws, the defendant must "'submit to the burdens of litigation in that forum.'" *Id*. (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 8
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

Washington's FIPA prohibits the sale of unregistered franchises in Washington and provides for jurisdiction in Washington courts over cases arising out of such sales. RCW 19.100.020(1) provides that it is unlawful "for any franchisor or subfranchisor to sell or offer to sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted." RCW 19.100.160 provides:

> Any person who is engaged or hereafter engaged directly or indirectly in the sale or offer to sell a franchise … or in business dealings concerning a franchise, either in person or in any other form of communication, shall be subject to the provisions of this chapter, shall be amenable to the jurisdiction of the courts of this state . . . and shall be amenable to the service under RCW 4.28.180, 4.28.185, and 19.86.160.

In the case *Huebner v. Sales Promotion*, 38 Wn. App. 66 (1984), the Washington Court of Appeals considered a scenario similar to the instant case, determining whether it had specific jurisdiction over a corporation and two of its officers involved in offering franchise agreements. The court noted that "RCW 19.100.160 is plainly broad enough to confer jurisdiction over all defendants. The issue is whether constitutional due process imposes a barrier to some or all of them." *Huebner*, 38 Wn. App. at 70. In that case, in approving the trial court's imposition of specific jurisdiction, the court noted that the defendant "was the primary participant in the offer and sale of an unregistered franchise—the very conduct proscribed by the FIPA." *Id*. at 72 (primary activities of partnership agreement and harm that would flow from activities would foreseeably occur in Washington).

In the instant case Henning had reason to expect she would be hailed into a court in Washington. She was intimately involved in the marketing and sale of the Washington Party Princess franchise to the Taylors. She met the Taylors at Discovery Day and sold them on her involvement as the founder, co-owner, and creative force behind the company. She also befriended Mrs. Taylor and used that bond to help close

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 9
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

the deal. Henning stayed involved until the final business meeting, ensuring the Taylors were comfortable through signing and payment. *Declaration of Sean Taylor*, ¶ 2-4; *Declaration of Stephanie Taylor*, ¶¶ 2-6. While Henning argues that her interactions with the Taylors were merely personal in nature, Henning and Rothschild were the faces of the franchisor. Henning's representations were just as important to the Taylors as Rothschild's. *Declaration of Stephanie Taylor*, ¶ 8.

In Henning's motion she appears to argue that she was not an officer, member, or shareholder of any Party Princess. Yet, Party Princess' Franchise Disclosure Document represents Henning as the founder of Party Princess Productions; the CEO of its parent company, Rothschild Enterprises, Inc.; and part owner and advisor to Party Princess USA, LLC, Party Princess Productions, Chic Party Rentals, Inc., and The Icicles, LLC. (*DKT* #8-1, p. 91). Likewise, Henning's declaration in her and Rothschild's divorce proceedings indicate she was active in the company. She stated, "I am the creative person behind the company. I started the way the company runs, methods to use with marketing and a myriad of other things necessary to establish and run the business." *Declaration of Sean Taylor*, ¶ 6. Further, it is clear from the email between Rothschild and Page Nicol that the purpose of Henning's meetings with Mrs. Taylor was to help close the deal with the Taylors. To assert that Henning's only wrongdoing was to be married to Rothschild, ignores her involvement in the company and in inducing the Taylors to purchase a franchise.

While the Taylors lived in California at the time the initial franchise was negotiated, Henning knew that the Taylors were planning on moving to Washington to manage the franchise, which they did before the final payment was made. Just as in the *Huebner* case, Henning was a primary participant in the sale of an unregistered Washington franchise—the focal point and end point of which would be in

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 10
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

Washington—and which had the potential to harm Washington consumers. *Huebner*, 38 Wn. App. at 72 ("The fact that he was conducting these activities in Texas does not preclude Washington from exercising jurisdiction over him where the harm was suffered in Washington.").

Additionally, Party Princess defrauded another Washington resident through the sale of another Party Princess franchise, as is evidenced by the Securities Division findings. As in the *Huebner* case, while this fact is not directly relevant to the minimum contacts in this case, it belies Henning's assertion that she had zero involvement with Washington and could have no reasonable expectation of being hailed into court in Washington. Here, the effects test for tort-based causes of action is satisfied. Henning committed intentional acts (misrepresentations) expressly aimed at the forum state (the sale of an unlawful Washington franchise), and caused harm, the brunt of which occurred in Washington. Moreover, Henning purposefully availed herself of the privilege of conducting business in the forum state. There are sufficient contacts here to satisfy due process concerns. Henning is subject to specific jurisdiction in Washington under RCW 19.100.160.

**B.   Plaintiff does not oppose Henning's motion to compel arbitration.**

Plaintiff does not oppose Henning's motion to compel arbitration. The Court should exercise its jurisdiction over Henning and compel arbitration just as it did in its order denying Defendant Rothschild's motion to dismiss (*DKT* #25) and subsequent order granting Rothschild's motion to compel arbitration (*DKT* #42).

**C.   Plaintiff has asserted several actionable claims against Henning and the Court should deny Henning's motion to dismiss for failure to state a claim.**

In the alternative, if the Court does not dismiss this matter for lack of jurisdiction or compel arbitration, Henning moves for dismissal under F.R.C.P.

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 11
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

12(b)(6), for failure to state a claim upon which relief can be granted. The Court should not address this argument and should grant Henning's motion to compel arbitration. As Henning argues in her motion, if the Court concludes it has specific jurisdiction over Henning, it means the Court believes Henning falls within the jurisdictional reach of FIPA. This Court has already found that the arbitration clause at issue was enforceable in its Order granting Rothschild's motion to compel arbitration. (*DKT* #42). "If the court finds as a matter of law that the arbitration clause is enforceable, all issues covered by the substantive scope of the arbitration clause must go to arbitration." *Townsend v. Quadrant Corp.*, 153 Wn. App. 870, 881 (2009). Thus, the Court should not consider the substantive arguments raised in Henning's Rule 12(b)(6) motion. If the Court considers Henning's Rule 12(b)(6) motion, it should deny the motion for the following reasons.

> *1. Plaintiff pled plausible claims against Henning as required by Rule 12(b)(6).*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, which if accepted as true, states a claim to relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must rise above the mere conceivability or possibility of conduct that entitles the pleader to relief. *Iqbal*, 556 U.S. at 678-79.

Further, in considering a Rule 12(b)(6) motion-to-dismiss, the Court does not have to consider whether the factual allegations are probably true. Rather the Court

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS - 12
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

must take the allegations as true, no matter how skeptical the court may be. *Iqbal*, 556 U.S. at 696. The Court must also view factual allegations in the light most favorable to the pleader, *See, e.g., Ileto v. Glock Inc.*, 349 F3d 1191, 1199–1200 (9th Cir 2003), and may not dismiss a claim based on its assessment that the pleader will fail to find evidentiary support for the allegations or fail to prove the claim to the satisfaction of the fact-finder. *Bell Atl. Corp. v. Twombly*, 550 US 544, 563, 563 n 8, 127 S Ct 1955, 167 L Ed2d 929 (2007).

"(W)here the claim is plausible – meaning something more than 'a sheer possibility,' but less than a probability – the plaintiff's failure to prove the case on the pleadings does not warrant dismissal." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012); (*quoting Ashcroft*, 556 U.S. at 678). "All that matters at this stage is that the allegations nudge this inference 'across the line from conceivable to plausible.'" *Id*; (*quoting Ashcroft*, 556 U.S. at 680).

      i.     <u>Intentional Misrepresentation</u>

In order to prevail on a claim for intentional misrepresentation, a plaintiff must show: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) the plaintiff's ignorance of its falsity; (7) the plaintiff's reliance on the truth of the representation; (8) the plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff. *Poulsbo Grp., LLC v. Talon Dev., LLC*, 155 Wn. App. 339, 346 (2010).

Plaintiff alleged that Henning acted as and was disclosed in writing as the founder and active franchise advisor of Party Princess. (*DKT* #33, ¶2). Henning and Rothschild portrayed themselves as a team—Rothschild in charge of operations and Henning handling the creative side. *Id*. at ¶ 20. After purchasing the franchise, the

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 13
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

Taylors never heard from Henning and learned that the Henning and Rothschild were in the process of divorcing. Hayley claimed in her divorce filings that Morgan had blocked her from the business for the past couple of years and she had no active role in the company. *Id*. at ¶ 20.

Henning also held herself out and was reported as the founder and active franchise advisor to Party Princess. Party Princess made many material misrepresentations to the Taylors, including that the franchisee would easily exceed $100,000 in gross revenues, that the Google marketing campaign alone would generate at least $100,000 per year, that the worst-case-scenario was 40 parties per month, and that the Taylors would be profitable within a short while—all of which were false statements that Henning, in her role as founder and active franchise advisor to Party Princess would have known to be false at the time. *Id*. at ¶¶ 30-31.

Henning made material misrepresentations in her role in the company, of her role in the company, and of the status of her relationship with Rothschild in order to induce the Taylors into purchasing a franchise. The Taylors reasonably relied on Henning's misrepresentations, leading to a significant financial loss. The Taylors have pled a plausible claim against Henning for intentional misrepresentation.

ii. <u>Negligent Misrepresentation</u>

To prove negligent misrepresentation, a party must show that (1) the defendant supplied information that was false for the guidance of the plaintiff in a business transaction, (2) the defendant knew or should have known that the information was for the purpose of guiding the plaintiff in a business transaction, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the information, (5) the plaintiff's reliance was reasonable, and (6) the false information

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 14
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

proximately caused the plaintiff damages. *Dewar v. Smith*, 185 Wn. App. 544, 562 (2015).

As the allegations discussed above with respect to intentional misrepresentation indicate, Henning knowingly misrepresented her role in the company and her relationship with Rothschild in order to induce the Taylors into purchasing a franchise. Henning allowed the Taylors to believe she was active in the company, her relationship with Rothschild was strong, and that the Taylors could expect to achieve certain performance measures with the franchise. The Taylors reasonably relied on Henning's misrepresentations, leading to a significant financial loss. The Taylors have pled a plausible claim against Henning for negligent misrepresentation.

### iii.   FIPA and Consumer Protection Act

Under Washington's Franchise Investment Protection Act, the commission of any unfair or deceptive acts or practices constitute an unfair or deceptive act or practice under Washington's Consumer Protection Act. RCW 19.100.190. FIPA also provides that it is unlawful "for any franchisor or subfranchisor to sell or offer to sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted." RCW 19.100.020(1). To prove a CPA claim, a party must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered. *Dewitt Const., Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002).

Henning, in her position with Party Princess, violated FIPA by failing to provide a franchise disclosure document or by providing a franchise disclosure document that did not meet the requirements of RCW 19.100.040 and by selling a franchise without it being registered with the state to do so. Henning personally violated FIPA by making

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS - 15
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

untrue statements of material fact and by omitting material facts necessary to make statements which were made not misleading in connection with the offer and sale of a franchise. Henning's FIPA violations constitute unfair or deceptive acts under Washington's CPA and occurred in trade or commerce as they related to the sale of a franchise. Henning's wrongful conduct impacts the public interest as other Washington citizens have been harmed and potential exists for other Washington citizens to be harmed in a similar manner. The Taylors suffered significant financial harm as a result of Henning's FIPA and CPA violations and Plaintiff has pled a plausible Consumer Protection Act Claim against Henning.

          iv.     <u>Unjust Enrichment</u>

To establish unjust enrichment, a party must show: (1) one party must have conferred a benefit to the other; (2) the party receiving the benefit must have knowledge of that benefit; and (3) the party receiving the benefit must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009).

The Taylors paid a significant amount of money to Party Princess. As an owner, Henning benefited personally from the Taylor's payment for the franchise. Henning actively participated in inducing the Taylors to purchase a Party Princess franchise and was aware of the benefit. Given that the franchise was vastly inferior to what was promised to the Taylors, it would be inequitable for Henning to retain the benefit of the Taylors' payment.

> 2. *To the extent required, Plaintiff pled the elements of the claims that sound in fraud, in compliance with the heightened pleading requirements of Rule 9(b).*

Cases that are "grounded in fraud" or "sound in fraud" must satisfy the particularity requirement of F.R.C.P. 9(b). *Vess v. Ciba-Greigy Corp.*, 317 F.3d 1097,

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 16
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1103-04 (9th Cir. 2003). However, a plaintiff may allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F3d 1097, 1104 (9th Cir 2003). Moreover, fraud is not an essential element of an unjust enrichment or consumer protection act claim if the gravamen of the complaint is not fraud. *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F Supp 2d 1256, 1265 (WD Wash 2009). To comply with the heightened pleading requirements a plaintiff must allege "the who, what, when, where, and how of the misconduct charged," and "set forth what is false or misleading about a statement, and why it is false." *Ebeid v. Lungwitz*, 616 F3d 993, 998 (9th Cir 2010). Here, Plaintiff pled with sufficient particularity to satisfy Rule 9(b) with respect to the elements of its claim that sound in fraud.

Plaintiff alleged in its complaint that Henning acted as and was disclosed in writing as the founder and active franchise advisor of Party Princess. (*DKT* #33, ¶2). During the initial disclosure process, the Taylors attended a Discovery Day in California and met Henning. She and Mrs. Taylor connected and exchanged numbers so Mrs. Taylor could ask Henning more questions about the franchise. *Id.* at ¶ 19. Stephanie and Hayley continued to interact through phone calls, text messages, and meetings with their children present. Henning and Rothschild portrayed themselves as a team to the Taylors, and the Taylors trusted the Hennings based upon their friendship. Rothschild explained that he was in charge of management and operations, and Henning handled the creative side and was the heart of the business. *Id.* at ¶ 20. After purchasing the franchise, the Taylors never heard from Henning again. The Taylors later learned that Henning and Rothschild were in the process of divorcing, and Hayley claimed in her divorce filings that Morgan had blocked her from the business for the past couple of years and she had no active role in the company. *Id.* at ¶ 20.

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 17
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

In addition, Henning, in her role as owner and advisor to Party Princess, made many material misrepresentations to the Taylors. Party Princess represented that the franchisee would easily exceed $100,000 in gross revenues, that the Google marketing campaign alone would generate at least $100,000 per year, that the worst-case-scenario was 40 parties per month, and that the Taylors would be profitable within a short while—all of which were false statements that Party Princess knew to be false at the time. *Id.* at ¶¶ 30-31.

Plaintiff alleges with sufficient particularity the misrepresentations that led to Plaintiff's claims.

**D.   Henning's petition for attorney fees violates 11 U.S.C. § 524.**

Henning's Motion also seeks recovery of her fees against the bankruptcy estate of the Taylors for action (filing the Complaint on September 17, 2018) that was taken *before* the Taylors filed their bankruptcy petition on September 27, 2018. Thus, the only claim for fees would be against the Taylors as debtors, and not the Bankruptcy Trustee. However, the Taylors' discharge through their bankruptcy filing prevents such an action. Pursuant to 11 U.S.C. § 524, the Taylors discharge through the bankruptcy operates as an injunction against the commencement or continuation of any act to collect, recover, or offset any debt against the debtors. The request for fees is an actionable violation of 11 U.S.C. § 524 because Henning seeks to recover fees on an action that occurred before the bankruptcy filing. Henning's request for fees should be denied.

## IV.   CONCLUSION

The court should deny Henning's motion to dismiss based on lack of personal jurisdiction, because this court has specific jurisdiction over Henning. Upon finding that it has personal jurisdiction over Henning, the Court should grant Henning's motion to

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 18
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

compel arbitration. Therefore, the Court should not consider Henning's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. If the Court does consider Henning's Rule 12(b)(6) motion, it should deny the same. The Court should not award Henning her fees as her request for fees violates 11 U.S.C. § 524.

DATED this 16th day of September, 2019.

LANDERHOLM, P.S.

*/s/ Phillip J. Haberthur*
PHILLIP J. HABERTHUR, WSBA #38038
Of Attorneys for Plaintiff

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY
HENNING'S MOTION TO DISMISS - 19
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

# CERTIFICATE OF SERVICE

The undersigned hereby certifies as follows:

1. My name is Heather A. Dumont. I am a citizen of the United States, over the age of eighteen (18) years, a resident of the State of Washington, and am not a party of this action.

2. On the 16th day of September, 2019, I caused to be served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION AND STAY ACTION** by electronic notice through the court's ECF system, upon the following:

| | |
|---|---|
| **Curt Roy Hineline, WSBA #16317**<br>**Carolyn Robbs Bilanko, WSBA #41913**<br>**Anthony Robert Sterling, WSBA #53424**<br>Baker & Hostetler LLP<br>999 Third Avenue, Suite 3600<br>Seattle, WA 98104-4040<br>E-mail: chineline@bakerlaw.com<br>cbilanko@bakerlaw.com<br>asterling@bakerlaw.com<br>Courtesy E-mail: ssmith@bakerlaw.com | *Attorneys for Defendant Morgan Rothschild* |
| **Russell D. Garrett, WSBA #18657**<br>Jordan Ramis, PC \| Attorneys at Law<br>1499 SE Tech Center Place, Suite 380<br>Vancouver, WA 98683<br>E-mail: russ.garrett@jordanramis.com | *Chapter 7 Trustee Appointed to Plaintiff's Robert Sean Taylor and Stephanie Taylor's Bankruptcy Estate* |
| **David M. Poore, WSBA #35859**<br>Preg O'Donnell & Gillett PLLC<br>901 5th Ave., Ste. 3400<br>Seattle, WA 98164<br>E-mail: dpoore@poglaw.com | *Attorneys for Defendant Hayley Henning* |

**I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.**

DATED: September 16, 2019
At: Vancouver, Washington

*/s/ Heather A. Dumont*
HEATHER A. DUMONT

PLAINTIFF'S RESPONSE TO DEFENDANT HAYLEY HENNING'S MOTION TO DISMISS - 20
3:18-cv-05863-BHS
TAYS07-000001 - 4390170_1

**LANDERHOLM**
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122