UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Russell D. Garrett, Chapter 7 Trustee for the bankruptcy estate of Robert and Stephanie Taylor,<br><br>                Plaintiff,<br><br>  v.<br><br>MORGAN ROTHSCHILD f/k/a MORGAN HENNING, HALEY HENNING, and FRANNET GLOBAL, LLC,<br><br>                Defendants. | CASE NO. C18-5863 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION, AND DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AS MOOT |

This matter comes before the Court on Defendant Hayley Henning's ("Henning") motion to dismiss or compel arbitration. Dkt. 45. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion to dismiss for lack of personal jurisdiction, grants the motion to compel arbitration, and denies the motion to dismiss for failure to state a claim as moot for the reasons stated herein.

ORDER - 1

## I. PROCEDURAL HISTORY

On September 17, 2018, Robert Sean Taylor ("Sean Taylor") and Stephanie Taylor ("Stephanie Taylor") (collectively "the Taylors") filed suit against Morgan Rothschild f/k/a Morgan Henning ("Rothschild"), his ex-spouse Haley Henning ("Henning"), and John Does 1-10 in the Washington Superior Court for Clark County. Dkt. 1-1. On October 25, 2018, Rothschild removed the case to this Court. Dkt. 1. On November 16, 2018, Rothschild moved to dismiss for lack of personal jurisdiction or in the alternative to compel arbitration and stay the case. Dkt. 7. On December 11, 2018, the Court entered a stay pursuant to the parties' stipulation for the parties to pursue settlement discussions and for the Taylors' counsel to seek litigation approval from the Bankruptcy Court. Dkts. 9, 10. On January 7, 2019, the parties agreed to lift the stay and renote the motion. Dkt. 11. On February 24, 2019, the Court granted the Taylors' motion to substitute Chapter 7 Trustee Russell Garrett ("Plaintiff") into the action as Plaintiff in place of the Taylors. Dkt. 19.

On May 2, 2019, the Court denied Rothschild's motion to dismiss for lack of personal jurisdiction or compel arbitration. Dkt. 25. On May 16, 2019, Rothschild filed a second motion to change venue and compel arbitration. Dkt. 27. On May 30, 2019, Plaintiff filed an amended complaint with leave of the Court adding claims against Defendant FranNet Global, LLC ("FranNet"). Dkts. 31, 33. On July 12, 2019, the Court granted Rothschild's motion to compel arbitration. Dkt. 42.

On July 29, 2019, Plaintiff filed a notice of voluntary dismissal as to FranNet. Dkt. 43. On August 28, 2019, Henning filed the instant motion to dismiss or compel

arbitration. Dkt. 45. On September 16, 2019, Plaintiff responded. Dkt. 49. On September 20, 2019, Henning replied. Dkt. 53.

## II. FACTUAL BACKGROUND

This case involves a dispute between a franchisor and disenchanted franchisees. The Court summarized the facts relevant to all parties in prior orders but will focus in this order on the facts relevant to Henning. Dkts. 25, 42. Some of these facts are alleged in the amended complaint, Dkt. 33, and additional facts are contained in declarations and exhibits submitted with this motion.

Rothschild runs Party Princess International ("Party Princess"). Dkt. 1-1, ¶ 2. Henning, his former spouse, worked with Rothschild on the business and advised on franchises. *Id*. Plaintiff alleges that Henning acted as a founder and active franchise advisor of Party Princess. Dkt. 33, ¶ 2. Henning declares that though she is "the creative founder of the Party Princess concept," she did not have a formal role in the company between 2015 and 2018. Dkt. 47, ¶ 2. Rothschild "explained that he was in charge of management and operations, and [Henning] handled the creative side and was the heart of the business." Dkt. 33, ¶ 20. The Franchise Disclosure Document the Taylors received identified Henning as the founder of Party Princess and the CEO of its parent company, Rothschild Enterprises, Inc. Dkt. 8-1 at 90–91.

At some point in 2015, Sean Taylor consulted a franchise broker about investment opportunities who referred him to Rothschild. Dkt. 1-1, ¶ 15. At this time, all parties resided in California. *See* Dkt. 12 at 2, 3; Dkt. 16 at 6. Sean Taylor and Rothschild spoke by phone, and Rothschild "informed Taylor that a Google advertising campaign alone in

Taylor's prospective territory [partially in Washington] would generate at least $100,000 per year for Taylor," but Rothschild "could not put the projections in writing due to regulatory prohibitions." Dkt. 1-1, ⁋ 17. Rothschild also told Sean Taylor that meeting Party Princess's requirement that each franchise host 40 parties per month would be "easily achievable." *Id.* ⁋ 18.

Prior to purchasing a franchise, the Taylors attended an informational event about Party Princess where they met Henning, who was married to Rothschild at that time. Dkt. 33, ⁋ 19. Sean Taylor declared that at this event he spoke to Henning, told her he was planning to move to Vancouver, WA with his wife and looking for a home business, and Henning responded with an extensive history of her work with Party Princess, her partnership with her husband Rothschild, and their support for husband-and-wife teams like theirs. Dkt. 51, ⁋⁋ 2–3. Henning declared that she recalled speaking to Sean Taylor at the event but only recalled him "mentioning they were moving." Dkt. 47, ⁋ 12.

At a dinner following the event, Plaintiff alleges that Henning and Stephanie Taylor "made a connection and ended up exchanging phone numbers so Stephanie could ask [Henning] more questions about the franchise." Dkt. 33, ⁋ 19. After the event, Henning and Stephanie Taylor interacted through phone calls, text messages, and meetings with their children present. *Id.* ⁋ 20. Henning declared that she had only a personal interest in Stephanie Taylor and they connected about their health-focused lifestyles and positions on vaccinating children. Dkt. 47, ⁋⁋ 5–6.

Sean Taylor declared that in November 2015, he and Stephanie Taylor met with Rothschild in his office where he referenced himself and Henning as a team and

represented how much revenue the Taylors should expect to generate in Vancouver, WA. Dkt. 51, ¶ 9. Henning joined for lunch after the meeting, and Sean Taylor declared that there, Rothschild and Henning said the Taylors "were they [sic] type of people that they wanted to build this business with." *Id.* ¶ 10.

On November 23, 2015, a representative from FranNet contacted Rothschild to inquire whether Party Princess had a signing and deposit date for Sean Taylor. Dkt. 52-1. Rothschild responded saying he would keep the representative updated and that Henning had a play date the previous Friday with Stephanie Taylor which went well. *Id.*

Stephanie Taylor declared that Henning visited her at home on two occasions, and while they mostly discussed personal matters, they also discussed Henning and Rothschild's husband-wife partnership and strategies for work-life balance with a Party Princess franchise. Dkt. 50, ¶ 5. Stephanie Taylor declared that her relationship with Henning, "and [Henning's] representations about the business, her involvement in the business, the lifestyle it afforded her and her husband, and the successful marriage and business partnership she had with her husband, were very important to me in deciding to purchase a Party Princess franchisee." *Id.* ¶ 8. As an exhibit to her declaration, Stephanie Taylor attached a text message Henning sent her describing Henning's busy weekday schedule with Party Princess as an example of texts they exchanged "related to the business." Dkt. 50, ¶ 7; Dkt. 50-1. Henning declared that she visited Stephanie Taylor at her home with her mother and children for a playdate just prior to the Taylors' move to Washington. Dkt. 47, ¶ 9. Henning declared that she did not recall Stephanie Taylor asking her any questions about the Party Princess franchise. Dkt. 47, ¶ 11.

On December 4, 2015, Sean Taylor purchased a Party Princess Franchise, Dkt. 35, ¶ 5, "for the Washington territory." Dkt. 1-1, ¶ 21.[1] The parties' contract included a Franchise Agreement, a Washington Rider to the Franchise Agreement, a Franchise Disclosure Document, and an "Addendum to the Party Princess USA LLC Disclosure Document for the State of Washington." *See* Dkt. 8; Dkt. 8-1. The contract's documents contained a number of provisions regarding arbitration, which are set out in the Court's order compelling Plaintiff and Rothschild to arbitration. Dkt. 42.

After the Taylors purchased the franchise, they did not hear from Henning any further. Dkt. 33, ¶ 22. The Taylors later learned that Henning and Rothschild were divorcing and "[Henning] claimed in her divorce filings that [Rothschild] had blocked her from the business for the past couple of years and she had no active role in the company." *Id*.

Rothschild declares that the Taylors moved to the Pacific Northwest "sometime during 2016." Rothschild Decl. ¶ 2. The Taylors allege that despite Sean Taylor's continued efforts to operate the franchise, "including fully funding the marketing campaign, [he] never achieved the results promised by [Rothschild]." Dkt. 1-1, ¶ 24.

Plaintiff asserts four causes of action against Henning—intentional misrepresentation, negligent misrepresentation, violation of Washington's Franchise

---

[1] Rothschild argues that "[a]pproximately two-thirds of the Taylors' franchise territory was located in Portland, Oregon; the remaining third was located in Vancouver, Washington." Dkt. 7 at 3 (citing Rothschild Decl., ¶ 2).

Investment Protection Act ("FIPA"), RCW Chapter 19.100, and Washington's Consumer Protection Act ("CPA"), RCW Chapter 19.86, and unjust enrichment. Dkt. 33, ¶¶ 29–50.

### III. DISCUSSION

Henning asks the Court to dismiss for lack of personal jurisdiction, in the alternative to compel arbitration, or in the second alternative, dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 45 at 1–2. Plaintiff argues the Court has jurisdiction over Henning but does not oppose Henning's request that the Court compel arbitration. Dkt. 49 at 2. Plaintiff asks the Court to refer Henning's motion to dismiss for failure to state a claim to the arbitrator. *Id*.

**A.     Standard on a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)**

To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits, as long as that law is consistent with federal due process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Washington grants courts the maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Due process is satisfied when subjecting the entity to the court's power does not "offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]raditional notions of fair play and substantial justice" require that a defendant have minimum contacts with the forum state before it may be haled into a court in that forum. *Int'l Shoe*, 326 U.S. at 316. The extent of those contacts can result in either general or specific personal jurisdiction

over the defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citations omitted). "Additionally, any evidentiary materials submitted on the motion are construed in the light most favorable to the plaintiffs and all doubts are resolved in their favor." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

Specific jurisdiction permits a district court to exercise jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A defendant creates a substantial connection in a tort-based action when it purposefully directs its activities at the forum state, the lawsuit arises out of or relates to the defendant's forum-related activities, and the exercise of jurisdiction is reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Purposeful direction constitutes (1) an intentional action, (2) expressly aimed at the forum state, which (3) causes harm "the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1485–86 (9th Cir. 1993) (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)). In applying this test, the Court must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state." *Id.* at 290.

If the plaintiff establishes the first two factors, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These considerations include the extent of the defendant's purposeful interjection into the forum, the burden on the defendant, conflict of sovereignty with the defendant's state, the forum state's interest, judicial efficiency, the importance of the forum to the plaintiff's interest in convenient and effective relief, and the possibility of alternate forums. *Id*. (citing *Core-Vent*, 11 F.3d at 1487–88).

**B.     Merits of Henning's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)**

While Henning argues the Court should disregard the facts in the Taylors' declarations as contradicting their amended complaint and the depositions they gave in the Washington Department of Financial Institutions Securities Division investigation into Rothschild and Party Princess, the facts the Court relies on are not flatly contradicted or inherently incredible. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("Except in those rare cases where the facts alleged in an affidavit are inherently incredible . . . the district judge has no basis for a determination of credibility."). Plaintiff argues that Henning's close involvement in the marketing and sale of a Washington franchise subjects her to personal jurisdiction here, and the Court agrees.

First, Henning's conversations with the Taylors were intentional acts.  Second, regarding express aiming, Henning was aware the Taylors sought to purchase a Party Princess franchise with substantial Washington territory for the particular purpose of

moving to Washington and operating the business there. Henning, acting on behalf of Party Princess, allegedly misrepresented her level of involvement with Party Princess and her relationship with Rothschild, her husband, statements on which the Taylors alleged they relied on purchasing the franchise. These misrepresentations, aimed at inducing the Taylors to make a substantial purchase and create an ongoing business relationship between Party Princess and Washington, can be fairly said to be expressly aimed at Washington. Third, the Taylors alleged that they expected an ongoing relationship with Henning through the business, and Henning is reasonably alleged to have known the harm from her misrepresentations would be experienced once the Taylors moved to Washington and attempted to start operating their Washington-based business.

Next, this lawsuit arose out of those contacts expressly aimed at developing the Washington-based business relationship. *Picot*, 780 F.3d at 1211. Finally, Henning does not address and thus concedes the factors that a defendant may argue create a compelling case that jurisdiction is unreasonable. *Harris Rutsky*, 328 F.3d at 1132. Therefore, the Court concludes that it has specific personal jurisdiction over Henning.

**C.     Standard on a Motion to Compel Arbitration**

On review of a motion to compel arbitration, the court's role is limited to determining (1) whether the parties entered into a valid agreement to arbitrate and if so (2) whether the present claims fall within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proof on these questions. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel*

*Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). The FAA requires courts to stay proceedings when an issue before the court can be referred to arbitration. 9 U.S.C. § 3.

The Court previously concluded that the requirements to compel arbitration between Plaintiff and Rothschild were met and compelled those parties to arbitration. Dkt. 42 at 20. Plaintiff does not oppose Henning's request that if the Court finds jurisdiction, it compel arbitration for the same reasons addressed in its previous order. Dkt. 49 at 2. Therefore, the Court compels the parties to arbitration.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Henning's motion to dismiss for lack of personal jurisdiction is **DENIED**, Henning's motion to compel arbitration is **GRANTED**, and Henning's motion to dismiss for failure to state a claim is **DENIED as moot**. Dkt. 45.

Litigation between these parties shall be stayed pending the conclusion of arbitration and the Clerk shall administratively close this case pending completion of arbitration. Henning and Plaintiff shall immediately inform the Court when arbitration is complete or when this matter is otherwise resolved. In any event, the parties shall file a joint status report no later than June 1, 2020.

Dated this 6th day of November, 2019.

BENJAMIN H. SETTLE
United States District Judge